BERNARD KLEIN, Respondent, v. HARRY WILLIAMS and Others, Appellants.

Second Department, December 27, 1918.

Nuisance — negligence — liability of owners of building for injury to pedestrian struck by portion of cornice torn loose by wind — effect of lease of premises prior to accident — evidence — testimony as to conditions after accident.

Plaintiff alleged that while he was on the street in front of defendants' premises, a piece of a galvanized iron cornice on the building fell upon him through the negligence of defendants. They answered denying that they were in possession of the premises on the day of the accident, alleging that they had leased the same and that the tenants were in sole possession and control at the time of the accident, some four months after the lease. The plaintiff was permitted to amend his complaint by alleging that at the date of the lease and for a long time prior thereto the roof and cornice were out of repair and in a defective and dangerous condition, and that they so continued down to the happening of the accident. The case was tried and submitted to the jury upon the theory that at the date of the lease the condition of the cornice over the traveled street was such that it constituted a nuisance, for which the defendants, owners, would be liable, notwithstanding the lease. It appeared that on the morning of the accident there was a high wind blowing, and that on the preceding day the wind had attained the highest velocity ever recorded by the weather observer on said date; that the piece of cornice which fell was the center of three panels which were supported by posts and attached to the roof by braces, and that there was no evidence that the cornice was not reasonably safe on the day of the accident and when the lease was made. There was evidence, however, that the portion of the cornice which fell looked dirty and rusty on one end, but there was no connection shown between the rust and the accident.

Held, that a verdict that the cornice was out of repair and in a defective, worn and dangerous condition at the time the defendants made the lease four months before the accident or on the day of the accident is unsupported by legal proof.

Testimony that one of the posts supporting the cornice was loose after the accident was no evidence that it was loose before.

APPEAL by the defendants, Harry Williams and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 21st day of June, 1918, upon the verdict of a jury for $1,000,

and also from an order entered in said clerk's office on the 25th day of June, 1918, denying defendants' motion for a new trial made upon the minutes.

*Stephen P. Anderton* [*Edward K. Hanlon* and *Alfred W. Meldon* with him on the brief], for the appellants.

*Henry M. Dater* [*Jay S. Jones, Edward J. Fanning* and *Frank F. Davis* with him on the brief], for the respondent.

KELLY, J.:

At the opening of the trial the defendants' counsel stated that the defendant Williams was dead, and moved for a discontinuance of the action as to him. The plaintiff's counsel said that he would admit the death of Williams and that he made no opposition to the motion. In charging the jury the learned trial justice told them that there were but two defendants before the court. Nevertheless the verdict was returned against the three defendants and judgment was entered against the dead man. The counsel for respondent says this was done through inadvertence and consents that it be modified by reversing the judgment against defendant Williams, which is accordingly ordered without costs, and the action is discontinued as against him.

But we are compelled to reverse the judgment as against the other defendants as well, for the reason that the evidence was insufficient to justify the verdict. The complaint as originally framed stated a cause of action against defendants as the owners and in possession of premises Nos. 387 and 389 South Fourth street in the borough of Brooklyn, plaintiff alleging that on January 4, 1913, while he was on the street in front of said premises, a cornice on the building fell upon him through the fault, carelessness and negligence of defendants, injuring him about the head, limbs and body. The defendants answered denying that they were in possession of the premises on the day of the accident, alleging that in the preceding August they had leased the entire premises to Gurwitz and Lebowsky, and that the tenants were in sole possession and control of the buildings at the time of the accident some four months after the lease. The plaintiff moved to amend his complaint by alleging that at the date of

the lease and for a long time prior thereto, the roof and cornice were out of repair and in a defective, worn and dangerous condition, and that they so continued down to the happening of the accident, and the amendment was made without objection. The case apparently was tried and submitted to the jury upon the theory that at the date of the lease the condition of the cornice over the traveled street was such that it constituted a nuisance for which the defendants, owners, would be liable notwithstanding the lease. The accident happened about nine or ten o'clock in the morning. There was a high wind blowing, the United States weather observer testifying that on the preceding day, January 3, 1913, the wind attained at one time an extreme velocity of one hundred miles an hour from the southwest. He stated that the wind on that day attained the highest velocity ever recorded in his office in the month of January. His records showed that the gale continued on January fourth, the day of the accident, shifting to northwest about five A. M., and that between eight and nine o'clock the wind was blowing at the rate of sixty miles an hour with a maximum of seventy-two miles during one period of five minutes or more, and between nine and ten o'clock the velocity was fifty-eight miles an hour with a maximum at one time of sixty-five miles. There is no dispute that a piece of the galvanized iron cornice about ten feet in length by two feet in width was blown from the roof and struck the plaintiff. The piece thus dislodged was the center panel of three panels constructed on the roof. The panels were supported by posts and were attached to the roof by braces. The man who replaced it testified that the brace and part of the roof was torn away with the cornice. But there is an entire lack of evidence that the cornice was not reasonably safe on the day of the accident, and no attempt was made to prove that it was unsafe in August or September, 1912, when the lease was made. The cornice had withstood the exceptionally high wind of the preceding day as well as the gale on the morning of the accident. The only attempt to offer proof as to any defects in the structure was through the evidence of a letter carrier who saw the cornice fall. He testified that the piece of galvanized iron weighed from fifteen to twenty pounds, and that it was buckled, and the edges where it was fastened

to the post showed a dark red rust and were zig-zag, having the same appearance as the jagged edge of a torn piece of paper. He said the edges were scaly. This witness also testified that after the crash he looked up from the street to the roof, the building being six stories in height, and he observed one of the posts shaking. The portion of the cornice which fell had no paint on the extreme end and in other sections the paint had peeled off. The witness also said that it was windy at the time, but not blowing hard. A policeman who came to the scene about an hour after the accident testified that he observed the loose post from the street and that it was shaking and hanging over the street, the wind which was "pretty strong" was blowing it back and forth. A man who kept a grocery store in the building said that he saw the piece of cornice on the street, it looked dirty and a little rusty on one end. The plaintiff offered no evidence as to the method in which the cornice was constructed or secured. The evidence that it was secured to the posts and by braces to the roof was elicited from defendants' repairman. There was no evidence that it was insecurely fastened or that it was out of order on the day of the accident prior to the time it was blown off, nor did plaintiff offer any evidence showing any connection between the rust found on one end of the broken panel and the accident. That a cornice exposed to the elements may become rusty is undoubtedly true, and the rust may have some relation to the stability of the structure, but on the record before us this is all left to conjecture. The defendants' witness repairman testified that the brace which held the cornice in place had torn away from the roof, taking part of the roof with it. This would appear to have been the immediate cause of the blowing out of the panel, but there was no attempt made to prove insufficient fastening and when defendants attempted to obtain evidence as to the usual life of a cornice such as the one in suit, the plaintiff objected and it was excluded. The learned counsel for the respondent suggested upon the argument that the rule of *res ipsa loquitur* should apply between the plaintiff and defendants. It does not appear that the case was submitted to the jury upon that theory, but if such principle did apply, the defendants' repairman gave the reason, and there was no attempt made to contradict him or to show that the brace was

insufficient or rusted, or improperly or insecurely fastened. That one of the posts was loose after the cornice was blown out was no evidence that it was loose before.

The verdict of the jury that this cornice was out of repair and in a defective, worn and dangerous condition at the time the defendants made the lease four months before the accident, or on the day of the accident, appears to be based entirely on guesswork and conjecture and inferences based upon inference, and is unsupported by legal proof.

The judgment and order appealed from must be reversed, and new trial granted, costs to appellants Schulder and Blisnikoff to abide the event.

Jenks, P. J., Mills, Rich and Putnam, JJ., concurred.

Judgment and order reversed and new trial granted, costs to appellants Schulder and Blisnikoff to abide the event. Order to be settled on notice before Mr. Justice Kelly.